1UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
UNITED STATES                   )
                                )
v.                              )         No. 15-10127-MLW
                                )
TIMOTHY R. FLAHERTY             )
_____ )

**MOTION AND INCORPORATED MEMORANDUM OF LAW SEEKING AN ORDER REQUIRING THE GOVERNMENT TO PRODUCE DEPARTMENT OF JUSTICE AND UNITED STATES ATTORNEY'S OFFICE RECORDS DEMONSTRATING THE UNLIKELIHOOD OF ANY FEDERAL INVESTIGATION AND/OR PROSECUTION FOR VIOLATIONS OF 18 U.S.C. §249**

Now comes the defendant Timothy R. Flaherty who hereby moves, through counsel, that this Honorable Court order the early production of exculpatory evidence, and in particular documents, data, and records that will compellingly demonstrate that as a matter of law the Government cannot prove an essential element of 18 U.S.C. §1512(b)(3).   In support of this motion, the defendant states the following:

1.   The above-captioned indictment charges the defendant with violating 18 U.S.C. §1512(b)(3), a statute that requires that, amongst other elements, the Government prove that there was a "reasonable likelihood" that a federal investigation or prosecution would in fact be impeded or interfered with by the alleged conduct of the defendant. *See Fowler v. United States*, ___ U.S. ___, 131 S.Ct. 2045 (2011)(rejecting the interpretation of a similar obstruction statute's allowing for a nexus to federal law enforcement to be proven by evidence of the "possibility" rather than the "reasonable likelihood" that a federal interest existed at the time of the alleged

obstructive conduct). The holding in *Fowler extends* to the virtually identically-worded §1512(b)(3) under which Mr. Flaherty is charged. *See United States v. Tyler*, 732 F.3d 241, 251-52 (3d Cir. 2013) have extended *Fowler* to §1512(b); *Aguero v. United States*, 580 Fed. Appx. 748, 752 (11th Cir. 2014); *United States v. Williams*, 825 F.Supp.2d 128, 134 n.4 (D.D.C. 2011); *United States v. Eaton*, 2013 WL 3771279 at *2 (W.D.Ky. July 16, 2013). Accordingly, the "possibility" test that predated *Fowler* in the First Circuit, *see United States v. Byrne*, 435 F.3d 16, 25 (1st Cir. 2006); *United States v. Bailey*, 405 F.3d 102, 108 (1st Cir. 2005), has been effectively abrogated by the Supreme Court.

2.    In contrast to other elements of the statute, including the requirement that the government prove that the defendant corruptly persuaded a witness to hinder, delay, or prevent a communication to a law enforcement officer regarding the commission of a federal crime, *see, e.g.*, *Byrne*,  435 F.3d at 24-25, which is a subjective test that focuses on the defendant's mens rea at the time of the communication at issue, the "reasonable likelihood" element is an objective test that is subject to pretrial review under Fed. R. Crim. P. 12(b).

3. Strikingly, the United States Sentencing Commission reports that in the years 2012-2014 there was only a single prosecution in the District of Massachusetts for civil rights violations, and only three in all of the district courts within the First Circuit. Nationally, there were only 58 civil rights prosecutions in 2014, 58 in 2013, and 53 in 2012. *See* Federal Sentencing Statistics 2012, 2013, 2014.

4. While it is true that there could be a pending or foreseeable federal civil rights investigation that does not result in a prosecution, such investigations are strongly discouraged both by Department of Justice policy (the "Petite Policy") and by the "hate" crime statute itself, 18 U.S.C. §249(b) which, unusually, prohibits prosecution under the statute "except under the

certification in writing of the Attorney General, or a designee" that the State does not have jurisdiction, the State has requested that the federal government assume jurisdiction, or that a state verdict left "demonstrably unvindicated" federal interests in eradicating violence motivated by bias, or that a federal prosecution is in the public interest and necessary to secure substantial justice.[1] Here, the state has jurisdiction, it is vanishingly unlikely that the state would ask the federal government to assume jurisdiction while the state prosecution remains pending for the same offense conduct, and there is no reason to believe that the state proceedings will leave federal interests "demonstrably unvindicated" or render a federal prosecution necessary to secure substantial justice. *See also* United States Attorney's Manual §8-3.170 ("where state and local authorities undertake vigorous prosecution in state courts, it is Department policy to cooperate fully with the local prosecutor").

5. The underlying reality is that the alleged "hate" crime was being prosecuted by the Middlesex District Attorney's Office, that the prosecution was pending at all times that correspond to each communication alleged in the above-captioned indictment, that the state prosecution had not resulted in a trial, verdict, or sentence that could be viewed as leaving federal interests unvindicated, and, further, that the context of the underlying offense – a 1:1 verbal dispute where the alleged assault occurred as the state defendant drove off and where the evidence of "hate" came only from the victim's allegations of what the state defendant said as they communicated does not, inherently, evoke "substantial" federal interests.  The United States

---

[1] In addition, the United States Attorney's Manual requires that "[p]rior to presenting any civil rights case for indictment, . . . the United States Attorney shall provide written notification to the Civil Rights Division of the intention to seek an indictment or to file a felony information. This notification should occur at least 10 business days before the indictment will be presented to the grand jury, except in emergencies when time is of the essence. The notification should be accompanied by a copy of the proposed indictment and any existing prosecutive memorandum." United States Attorney's Manual §8-3.140.

Attorney's Manual itself advises that prosecution under §249 should not be predicated upon expressive speech alone. *See* United States Attorney's Manual §8-3.300 ("No attorney for the government may make prosecution or declination decisions based solely upon the speech or expressive conduct of a subject, victim, or witness.").

6. The state prosecution remains pending and, given the empirical improbability and unlikelihood of the federal prosecutorial authorities ever selecting the underlying offense that is the subject of the state prosecution for federal investigation or prosecution, there is a non-speculative basis for the defendant to request the following discovery given that it goes directly to his guilt or innocence of the crime charged, *i.e.*, its production is required by the due process and exculpatory evidence jurisprudence emanating from *Brady v. Maryland*, 373 U.S. 83 (1963) and from District of Massachusetts Local Rule 116.2(a)(1), which requires the production of "information that tends to . . . cast doubt on the defendant's guilt as to any essential element in any count in the indictment or information":

A.     Any and all records, reports, documents, and data reflecting the number of federal criminal investigations commenced in the District of Massachusetts for "hate" crime offenses for each year from 2012 through 2015;

B.     As to each such federal criminal investigation, any and all records, reports, documents, and data reflecting whether:

1.   the federal criminal investigation was commenced during the pendency of a state criminal prosecution for the same alleged criminal conduct;

2.   the federal criminal investigation was commenced following an adjudication in the state courts for the same criminal conduct;

3. the federal criminal investigation was commenced following a state court conviction for the same criminal conduct;

4. the federal criminal investigation was commenced based on a single verbal statement alleged by the victim to have been made by a private citizen (rather than a law enforcement officer) during a single encounter that lacked any indicia of premeditation or plan or being part of a pattern of similar conduct;

5. the federal criminal investigation was commenced based on the uncorroborated statement of an alleged hate crime victim charging that the potential target used language indicative of bias based on nationality; and

6. the federal criminal investigation was commenced based on the uncorroborated statement of an alleged hate crime victim charging that the potential target used language indicative of bias against Mid-Easterners or Muslims.

C.     Any and all records, reports, documents and data reflecting the number of allegations of the use of "hate" crime language during criminal offenses that were prosecuted in the Commonwealth of Massachusetts as state offenses that did not result in federal criminal investigations.

D.     Any and all records, reports, documents and data reflecting the number of allegations of "hate" crime offenses for each year from 2012-2015 that were reviewed by the Civil Rights Division of the Department of Justice nationwide and whether:

1. they resulted in federal criminal investigations;

2. they resulted in federal criminal prosecutions;

3. they were reviewed and rejected as being the basis for each federal criminal

investigation or prosecution;

4.   as to those that were approved for federal criminal investigation the number that were commenced during the pendency of a state criminal prosecution for the same alleged criminal conduct;

5.   as to those that were approved for federal criminal investigation and/or prosecution the number that were commenced following a state court adjudication for the same criminal conduct;

6.   as to those that were approved for federal criminal investigation and/or prosecution the number that were commenced following a state court conviction for the same criminal conduct;

7.   as to those that were approved for federal criminal investigation and/or prosecution the number that were commenced based on a single verbal statement alleged by the victim to have been made by a private citizen (rather than a law enforcement officer) during a single encounter that lacked any indicia of premeditation or plan;

8.   as to those that were approved for federal criminal investigation and/or prosecution the number that were commenced based on the uncorroborated statement of an alleged hate crime victim charging that the potential target used language indicative of bias based on nationality;

9.   as to those that were approved for federal criminal investigation and/or prosecution the number that were commenced based on the uncorroborated

statement of an alleged hate crime victim charging that the potential target used language indicative of bias against Mid-Easterners or Muslims.

E.      As to any federal criminal investigation and/or prosecution that was referred to and/or reviewed by the Department of Justice's Civil Rights Division and approved for federal criminal investigation and/or prosecution, any document, record, or report indicating the alleged factual basis of the "hate" crime and the basis for any decision to investigate and/or prosecute.

F.      As to any referral or review by the Civil Rights Division of any allegation of a "hate" crime offense that was not approved for federal criminal investigation and/or prosecution, any document, record or report indicating the alleged factual basis of the "hate" crime being reviewed and the basis for any decision not to approve federal criminal investigation and/or prosecution.

G.      As to any allegation of a "hate" crime that was referred directly to the FBI, any document, report, or data reflecting the number that were federally investigated by the FBI and those that were not.

H.      Any guidelines used by the Department of Justice, the United States Attorney for the District of Massachusetts, or the Federal Bureau of Investigation to determine the basis, standards, and procedures for commencing a federal criminal civil rights investigation and/or prosecution during the pendency of or after the conclusion of a state court criminal prosecution.

I.      Any reports, documents, or other information as to whether there was a federal criminal investigation of the defendant's client, Ralph Feinberg, for the same alleged criminal conduct that was the subject of the pending Middlesex prosecution of Mr. Feinberg between December, 2014 and June, 2015, and if so its genesis and whether notice had been given to or approval granted by the Civil Rights Division of the Department of Justice for such federal

investigation by either the FBI or United States Attorney's Office. *See* United States Attorney's Manual §8-3.100, 110.

J.      Any reports, documents or other information as to whether any involvement of federal law enforcement or prosecutors was targeting not Mr. Feinberg's alleged hate crime but instead the defendant's alleged obstructive conduct.

### LOCAL RULE 7.1(A)(2) STATEMENT

The undersigned counsel conferred with the attorney for the government, and the government has indicated that they will not assent to this motion.

By his attorneys,

**/s/Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

**/s/Thomas J. Butters**
Thomas J. Butters, Esq.
Butters Brazilian LLP
Mass. Bar No. 068260
699 Boylston St., 12th Floor
Boston, MA 02116
617-367-2600
butters@buttersbrazilian.com

Dated:          June 9, 2015

### Certificate of Service

I, Martin G. Weinberg, hereby certify that on this date, June 9, 2015, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants, including Robert A. Fisher and S. Theodore Merritt, Assistant United States Attorneys.

**/s/ Martin G. Weinberg**
Martin G. Weinberg