UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. NO. 15-10127-MLW |
| | ) | |
| TIMOTHY R. FLAHERTY, | ) | |
| | ) | |
| Defendant. | ) | |

# GOVERNMENT'S RESPONSE TO THE DEFENDANT'S SUPPLEMENTAL MOTION FOR DISCOVERY

The defendant has filed a motion, based on his interpretation of *Fowler v. United States*, 131 S. Ct. 2045 (2011), seeking discovery that, as he defines it, "concerns the question of whether a federal civil rights criminal investigation and/or prosecution was reasonably likely on December 23-24, 2014 and, separately, on May 6 and May 21, 2015 as opposed to 'remote, outlandish, [and] simply hypothetical.'" (Dkt. #28 at 7). The entirety of the defendant's discovery request is focused on an attempt to demonstrate that "there was in fact no initiation of any federal interest (and no reasonable likelihood of any foreseeable federal involvement in the Feinberg case until weeks after the December 23-24, 2014 conversations and meeting involving Flaherty that are discussed above)." (Dkt. #28 at 13). However, as the government previously stated in its discovery letter dated July 10, 2015 (Dkt. #25 at 1), federal authorities commenced a civil rights investigation on the afternoon of December 23, 2014. Thus, the *Fowler* "reasonably likely" standard is inapplicable to the facts of this case and his motion for discovery should be denied.

## INTRODUCTION AND BACKGROUND

On the afternoon of December 23, 2014, the United States Attorney's Office for the

District of Massachusetts ("USAO") was contacted by Sgt. Paul Bulman of the Massachusetts State Police ("State Police") and notified of a civil rights case that was pending in Middlesex County, *Commonwealth v. Ralph Feinberg*. Sgt. Bulman notified the USAO that defendant in the state case, Ralph Feinberg ("Feinberg"), was being represented by Attorney Timothy Flaherty ("Flaherty") and that Flaherty had contacted the civil rights victim in the Feinberg case and offered the victim money to drop the civil rights case. Sgt. Bulman informed the USAO that Flaherty was eager to meet the victim and give him cash in exchange for dropping the civil rights case against his client Feinberg. The USAO informed Sgt. Bulman that they were interested in investigating the civil rights case and the potential witness tampering case. The USAO instructed Sgt. Bulman to immediately forward the Feinberg case file via email and the USAO also authorized Sgt. Bulman and the State Police to record the victim meeting with Flaherty that was scheduled to occur on December 24, 2014. The USAO received the Feinberg case file on the afternoon of December 23, 2014, and reviewed the reports of the incident and Feinberg's three-page Massachusetts Board of Probation criminal record ("BOP") contained therein. The USAO made particular note of the fact that Feinberg, at least according to his BOP, had a history of disturbing criminal behavior that closely mirrored the recent state civil rights allegations. For instance, Feinberg had previously been convicted of a Violation of Constitutional Rights (1999-Brookline District Court) and a Violation of Civil Rights (2000-Boston Municipal Court). In addition, the USAO immediately noticed that, in June of 2009, according to the BOP received from the State Police on the afternoon of December 23, 2014, Feinberg was convicted in United States District Court for the District of Massachusetts for Interfering with a Flight Crew and received 3 years of probation and, in October of 2010, he was sentenced to 3 months imprisonment and 27 months of supervised release based on a violation of his probationary term. Interestingly, the federal conviction was recorded as being

an "open" case according to this copy of the BOP (printed on December 16, 2014) and the USAO took immediate action to determine whether Feinberg was, in fact, still on federal supervised release in Massachusetts.

The USAO contacted the United States Probation Office ("USPO") in Boston and inquired whether Feinberg's federal supervised release was still active. The USPO informed the USAO that Feinberg had originally been convicted in the District of Arizona and his probation was then transferred to the District of Massachusetts. The USPO further stated that Feinberg's probation was revoked by Judge Young and Feinberg was sentenced to imprisonment and his supervised release was extended for 27 months. The USPO stated that Feinberg's supervised release had terminated sometime in 2013 and his BOP should no longer reflect the federal case as open. The USAO requested a copy of Feinberg's presentence report from the USPO but they declined to provide it. The USAO then ascertained the identity of the federal prosecutor that handled the Feinberg probation revocation and attempted to locate a copy of Feinberg's federal PSR. The prosecutor who handled the Feinberg matter was contacted but was not able to produce the PSR until December 29, 2014. The USAO also received the Feinberg PSR from the District of Arizona on December 29, 2014. The USAO, after reviewing the Feinberg materials from the State Police and speaking with Sgt. Bulman regarding the potential of witness tampering involving Flaherty, opened up a civil rights and witness tampering investigation on December 23, 2014. Furthermore, the USAO forwarded this case opening information, and the Feinberg case file to the FBI on the evening of December 23, 2014.  *See Declaration of Assistant U.S. Attorney Fred M. Wyshak, Jr.*, attached as Exhibit 1.

The USAO closely followed the developments that occurred on December 24, 2014 between the civil rights victim and Flaherty and was eager to meet with the victim but the victim

was traveling out of the country for approximately one month. The USAO met with the FBI, the State Police, and the Middlesex District Attorney's Office on January 7, 2015 regarding the civil rights and the witness tampering investigations. On February 5, 2015, the FBI conducted an interview of a potential witness to the Feinberg investigation. On February 23, 2015, the USAO and the State Police met with the civil rights victim and spoke with him regarding the Feinberg investigation.

The FBI internally documented the initiation of the federal criminal civil rights investigation by memorandum dated January 20, 2015.   Based on the memorandum, a civil rights investigation was also opened in the Criminal Section, Civil Rights Division ("CRT") of the Department of Justice.   In the ensuing months the USAO and CRT attorneys consulted on the investigation.

## ARGUMENT

The defendant's purported legal justification for the myriad of categories of data on the Department of Justice's investigations and prosecutions of federal hate crimes, as well as discovery of various internal communications, rests on a misapplication of *Fowler v. United States*, 131 S. Ct. 2045 (2011) to the facts and circumstances of this case.[1] In *Fowler*, several bank robbers were plotting the robbery when a local police officer came upon them suddenly and

---

[1] In passing, the defendant also claims that "[i]n a prosecution under 18 U.S.C. § 1512(b)(3), the government must prove a federal nexus between the 'persuasion' act in paragraph (b) and the object of the interference in the subsequent subsections," citing *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707 (2005). Dkt. #28 at 16.   However,  *Arthur Andersen* concerned the nexus requirement in § 1512(b)(2), which focuses on obstruction or witness tampering in relation to an official proceeding, and the Supreme Court in *Fowler* makes no reference to *Arthur Andersen*.    The inapplicability of *Arthur Andersen* to § 1512(b)(3) was also noted by the First Circuit in *United States v. Byrne*, 435 F.3d 16, 25 (1st Cir. 2006)("expressing doubts" that *Arthur Andersen* requires a heightened showing of a nexus in a § 1512(b)(3) prosecution between the intent to hinder communication and a particular law enforcement agency").

Fowler killed him. Fowler was indicted and convicted under 18 U.S.C. § 1512(a)(1)(C) for killing the victim to prevent him from communicating with a federal officer, as required by the statute. The conviction was upheld by the Eleventh Circuit holding that a showing of a "*possible* or *potential* communication to federal authorities" was sufficient. 131 S. Ct. at 2048 (emphasis in original). In reviewing the conviction, the Supreme Court framed the question before it as follows:

> We focus on instances where a defendant killed a person with an intent to prevent that person from communicating with law enforcement officers in general but where the defendant did not have federal law enforcement officers *(or any specific individuals)* particularly in mind. The question before us concerns what, if anything, the Government must show beyond this broad in-definite intent in order to show that the defendant more particularly intended to prevent communication with federal officers as well. We hold that, *in such circumstances*, the Government must show that there was a reasonable likelihood that a relevant communication would have been made to a federal officer.

*Id*. at 2048 (emphasis added). The Court was trying to synthesize the language of the statute that a defendant intends to prevent communication "to a law enforcement officer of the United States" with a related subsection that states:

> no state of mind need be proved with respect to the circumstance ... that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government.... § 1512(g)(2).

*Id*. at 2049.

The Court explicitly excluded from its holding applications to non-hypothetical circumstances. The *Fowler* Court began its analysis by explaining situations under which the statute was clear, and in no need of further interpretation. "If a defendant kills a victim with the intent of preventing the victim from communicating with a particular individual, say John Smith,

who the defendant knows is a federal law enforcement officer, the statute fits like a glove." *Id*.[2]

"If a defendant kills a victim with the intent of preventing the victim from communicating with Sam Smith, who is in fact (but who the defendant does not know is) a federal law enforcement officer, the statute still fits, for it specifically says that 'no state of mind need be proved' with respect to this last-mentioned circumstance." *Id.*[3] In other words, the "reasonably likely" nexus discussed in *Fowler* simply does apply to this case where federal participation in the investigation of the underlying hate crime had begun by the time Flaherty paid the victim the money and continued while Flaherty's attempted obstructive conduct further ensued.

*Fowler* was concerned with tampering that prevents hypothetical communications with federal law enforcement, not real ones. *Id*. at 2050 ("And we must consequently decide what, if anything, the Government must show about the likelihood of a hypothetical communication with a federal law enforcement officer in circumstances where the defendant did not think specifically about any particular communication or its recipient."); *see also United States v. Jinian*, 725 F.3d 954, 967 (9th Cir. 2013) ( "The *Fowler* Court adopted a foreseeability standard because the witness tampering statute addresses hypothetical communications."). Where the witness has already spoken to a federal law enforcement officer (or, as in this case, Sgt. Bulman effectively authorized to work on behalf of the federal government),[4] the requirement of a "reasonable likely

---

[2] This scenario, of course, was reflected in the May 16 and 21, 2015 calls when Flaherty, confronted with the information that federal authorities wanted to speak with the victim, told the victim not to speak to the U.S. Attorney's Office and the FBI, respectively.

[3] This scenario also applies to this case because, unknown to Flaherty, the victim was already cooperating with a federal investigation by December 24, 2014, when Flaherty paid him the bribe to not show up in court.

[4] § 1515(a), which defines the terms used in § 1512, provides, in pertinent part: "the term 'law

showing" does not apply, nor does it make any sense. *See Cross v. Wilson*, No. 2:11CV332, 2011 WL 9156863, at *3 (E.D. Va. July 1, 2011) aff'd, 454 F. App'x 229 (4th Cir. 2011) (denying § 2255 relief based on a post-*Fowler* claim that the law had changed; "In the instant action, the victim had already spoken to a federal law enforcement officer. Therefore, there is no need to determine whether there is a reasonable likelihood of the witness speaking with a federal law enforcement officer under either 18 U.S.C. § 1512 or § 1513.").

Essentially, *Fowler* has not changed the law "that the statute explicitly disclaims any requirement that the defendant knew that the "communication ... of information relating to the commission or possible commission of a Federal offense" would be made to a federal official. 18 U.S.C. § 1512(g)(2). *Fowler,* 131 S.Ct. at 2050 ("And we cannot insist that the defendant have had some general thought about federal officers in mind because the statute says that 'no state of mind need be proved' in respect to the federal nature of the communication's recipient."); *see also United States v. Baldyga*, 233 F.3d 674, 680 (1st Cir. 2000) ("We also want to dispel any notion that the defendant's intent ... must include an awareness of the possible involvement of federal officials."). That Flaherty attempted to corruptly persuade the victim on December 24, 2014 from communicating further with state investigators and ADAs when, in fact, the victim was already communicating with those who would investigate his client's conduct as a federal crime is of no

---

enforcement officer' means an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant ... authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense." 18 U.S.C. § 1515(a)(4)(A).   Similarly, 18 U.S.C. § 1512(g)(2) states that "not state of mind need be proved with respect to the circumstance . . . that the law enforcement officer is . . . a person authorized to act for or on behalf of the federal government."  *See United States v. Baldyga*, 233 F.3d 674, 680 (1st Cir. 2000)(" Because the local police officers monitoring the transaction between Chenevert and Baldyga were acting with the DEA as part of a joint investigation, they may be considered federal officials for the purposes of § 1512(b)(3)").

consequence. *Byrne*, 435 F. 3d at 25 ("we doubt that a defendant is beyond the purview of subsection (b)(3) merely because he expected the witness he tampered with to be interviewed by State Officer X in particular, but the witness actually was contacted by Federal Agent Y"); *see also United States v. Applewhaite*, 195 F.3d 679, 687 (3d Cir.1999) ("One who attempts to corruptly influence an investigation takes his or her witnesses and investigation as he or she finds them.").

While the law is clear under § 1512 that a federal investigation need not be ongoing at the time of a defendant's witness tampering, it is equally established that proof that a federal investigation had begun at the time of the tampering satisfies whatever requisite federal nexus is required, given that, under § 1512(g), a defendant need not suspect that the witness would communicate to federal, as opposed to state, officials. In *United States v. Rodriguez–Marrero*, 390 F.3d 1, 13 (1st Cir. 2004), the court, analyzing a parallel provision for witness tampering by murder[5], held that the federal nexus can be satisfied "among other ways, by demonstrating that the underlying offense was a federal offense and that the federal authorities had begun an investigation prior to the informant's murder or attempted murder." *Id.* (citing *United States v. Bell*, 113 F.3d 1345, 1349–50 (3d Cir.1997)). The *Rodriguez-Marrero* court went on to reject the defendant's argument that he had believed his crime to be of a non-federal nature, stating "[defendant]'s claim that he did not realize that he was helping to conceal a federal crime by murdering [the victim] is irrelevant." *Id.* (citing *Applewhaite,* 195 F.3d at 687 ("All that [a parallel provision in the Witness Protection Act][6] requires is that the government establish that the defendants had the intent to

---

[5] 18 U.S.C. § 1512(a)(1)(C); the two provisions are part of the group of provisions related to "law enforcement" or "investigation," and are frequently subject to similar analysis. *See, e.g., United States v. Tyler*, 732 F.3d 241, 248 (3d Cir. 2013) (distinguishing 1512(a)(1)(C) and (b)(3) from the "official proceedings" group of provisions in 1512(b)(1-2), etc.)

[6] 18 U.S.C. § 1512(b)(3).

influence an investigation that happened to be federal.").[7]

Thus, Flaherty's argument that he did not believe that the underlying civil rights crime would be of investigative interest to the federal authorities is not only legally irrelevant, but fails to establish why the data he seeks on federal hate crime investigations and prosecutions is favorable, much less material, to his defense to the charges.

Flaherty also makes the unfounded argument that the federal civil rights investigation was some kind of subterfuge to justify a federal nexus for the witness tampering charge.  But this baseless allegation, too, does not justify the kind of wholesale and intrusive discovery he seeks. First, § 1512(b)(3) requires only that the communications sought to be prevented relate to the "possible" commission of a federal offense, and the statute sets no threshold for the severity of the conduct or level of proof to warrant an investigation.  Second, Flaherty's citation to cases involving "manufactured" federal jurisdiction offers no support.[8]  As the First Circuit has recognized, the reach of the defense of "manufactured jurisdiction is limited by focusing on the objective conduct of the defendant, rather than the government, in determining whether the element was truly furnished solely by the government. *United States v. Djokich*, 693 F.3d 37, 45 (1st Cir. 2012) (recognizing that manufactured jurisdiction is not present "when there is any link

---

[7] *Rodriguez-Marrero* preceded *Fowler*, but the standard has not changed; post-*Fowler* courts have recognized the sufficiency of such evidence in establishing the federal nexus. *See, e.g., United States v. Ramos-Cruz*, 667 F.3d 487, 499 (4th Cir. 2012) (explicitly recognizing the holding in *Rodriguez-Marrero* in deeming sufficient evidence of an ongoing federal investigation); *see also, Cross v. Wilson*, No. 2:11CV332, 2011 WL 9156863, at *3 (E.D. Va. July 1, 2011) *aff'd,* 454 F. App'x 229 (4th Cir. 2011) (explicitly rejecting the notion that *Fowler* applied to inquiry into federal nexus for witness tampering where the victim had already talked to federal law enforcement officer.)

[8] The so-called "manufactured jurisdiction" defense may apply when the government alone, rather than the defendant, furnished the federal element necessary for jurisdiction. *See United States v. Archer*, 486 F.2d 670, 686 (2d Cir. 1973).

9

between the federal element and a voluntary, affirmative act of the defendant.") (citing *United States v. Wallace*, 85 F.3d 1063, 1066 (2d Cir.1996)).   Here, as in *Wallace*, the "link between the federal element" — a federal investigation into a possible federal civil rights crime — "and the voluntary, affirmative act" — defendant's attempt to bribe a witness to that crime — clearly exists in part because of the defendant's acts.  *Id*.   No federal element was "furnished solely" by the government. *See Archer*, 486 F.2d at 685-86. The underlying, possible commission of a federal offense was caused by Feinberg's conduct, the investigation into that offense was the appropriate response within the purview of the federal authorities, and Flaherty's voluntary witness-tampering both on December 24, 2014 and subsequently in May, 2015 was certainly his own responsibility.[9]

In any event, for purposes of Flaherty's discovery motion, this Court need not address the deficiencies of his claim of "manufactured jurisdiction".   As the First Circuit has noted, "the concept of manufactured jurisdiction [is] a subset of the outrageous [government] misconduct doctrine." *Djokich*, 693 F.3d 37 at 45 (1st Cir. 2012)(citation omitted). Such a claim, if raised, is a legal one for the Court to decide.   The Supreme Court has explained that the phrase "material to the preparation of the defendant's defense" in Fed. R. Cr. P. 16(a)(1)(E)(I) 16 "means the defendant's response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456,

---

[9] Even if the government had instigated the witness tampering investigation for the sole purpose of catching the defendant in a sting, the defendant's later attempts to get the victim to ignore what he came to knew to be federal authorities would defeat the manufactured jurisdiction defense. *See Wallace*, 85 F.3d at 1066 ("when confronted with situations in which (i) the [government] introduces a federal element into a non-federal crime and (ii) the defendant then takes voluntary actions that implicate the federal element, . . . federal jurisdiction has not been improperly "manufactured" and that the statutory elements have been met"); *see United States v. Al Kassar*, 660 F.3d 108, 120 (2d Cir. 2011) ("Creating an opportunity for a defendant to engage in criminal conduct does not violate the Constitution and does not constitute a 'manufacture' of jurisdiction—or of any of the elements required to obtain a conviction for that criminal conduct.").

462 (1996). Thus, the Court held that the Rule "authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." *Id*. at 463.   Here, Flaherty's unsupported claim of some kind of "manufactured jurisdiction" is akin to the claims in *Armstrong*, which supports the denial of his broad discovery requests.

### PARTICULAR RESPONES TO DISCOVERY REQUESTS

**Fowler Requests**

Nos. 1-26.   For the reasons stated above, and because the defendant has been provided in this response with a statement of factual and chronological derivation of the federal investigation, the government opposes these requests.   In addition, Fed. R. Crim. P. 16(a)(2) exempts from disclosure "reports, memoranda, or other internal documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." While the government has voluntarily produced many internal FBI memoranda, it has not waived the operation of this rule, particularly as it exempts from disclosure email, memoranda and notes made by attorneys and investigators for the government relating to the investigation and prosecution of this case.   This rule applies in particular to Requests 1-8, 10-14, and 23-26.

**Silver Platter Doctrine**

As stated in its Discovery Letter Response, the government is not aware of any warrant being obtained or applied for pursuant to *Commonwealth v. Blood*, 507 N.E. 2d 1029 (Mass. 1987), and opposes Request No. 28 as violative of Rule 16(a)(2).   As for Request No. 29 for all policies and guidelines relating to the interception of oral or wire communications of defense attorneys, to the extent any such documents exist – and the government is not aware of any such DOJ guidelines – the government opposes this request.   Any such guidelines would not create any

enforceable rights for a defendant.  *See United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990) (the internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party); *United States v. Busher,* 817 F.2d 1409, 1411 (9th Cir.1987) (defendant not entitled to rely on United States Attorneys' guidelines where manual stated it did not create any rights enforceable at law by any party).   Thus, the production of any such guidelines would not be material to the defense.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:  *S. Theodore Merritt*
     ROBERT A. FISHER
     S. THEODORE MERRITT
     Assistant U.S. Attorneys

Date: August 12, 2015

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ S. Theodore Merritt
S. Theodore Merritt
Assistant United States Attorney