# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No. 15-cr-10127-MLW |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| TIMOTHY FLAHERTY, | |
| Defendant. | |

**CABELL, Magistrate Judge**:

**INTRODUCTION**

Pending before the Court are three motions: (1) Defendant's Motion and Incorporated Memorandum of Law Seeking an Order Requiring the Government to Produce Department of Justice and United States Attorney's Office Records Demonstrating the Unlikelihood of Any Federal Investigation and/or Prosecution for Violations of 18 U.S.C. §249; (2) Government's Motion to Strike the Defendant's Untimely Motion for Early Discovery; and (3) Defendant's Supplemental Motion for Discovery and Incorporated Memorandum of Law, which essentially incorporates and expounds upon the defendant's initial motion. (Dkt. Nos. 17, 19 and 28). For the reasons discussed below, the defendant's discovery motions are DENIED and the government's motion to strike is DENIED as moot.

**RELEVANT BACKGROUND**

In 2014, the defendant, an attorney, represented a client facing criminal charges in the Cambridge District Court. The client, Ralph Feinberg (Feinberg), was involved in a traffic incident with a person of Middle Eastern descent named Reda Bichri (Bichri), and in the course of the incident allegedly assaulted and battered Bichri and uttered racial epithets at him. According to

the indictment, the defendant thereafter allegedly attempted on numerous occasions to dissuade Bichri from communicating with officials involved in investigating the incident. Broadly speaking, there were four such episodes. First, on or about December 15 and 17, 2014, the defendant allegedly offered Bichri $2,500 if Bichri would agree not to cooperate with the Middlesex District Attorney's Office. Second, on or about December 24, 2014, the defendant met Bichri and gave him the money and instructed him to ignore any contact he might receive "from the court." Third, on or about May 6, 2015, the defendant instructed Bichri during a telephone conversation to tell the D.A.'s office that he had no interest in testifying against Feinberg, that he should "duck" any subpoena, and that he should "blow her off" and not return a call Bichri said he had received from the civil rights section of the U.S. Attorney's Office. Lastly, on or about May 21, 2015, the defendant told Bichri during another telephone conversation that he should not return a call he had received from the FBI regarding the incident with Feinberg. *See* Indictment, ¶¶ 1-12.

The government subsequently obtained an indictment charging the defendant with one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(3). Section 1512(b)(3) provides in pertinent part that "[w]hoever…corruptly persuades another person, or attempts to do so,…with intent to…hinder, delay or prevent the communication to a law enforcement officer…of information relating to the commission or possible commission of a Federal offense…shall be [guilty]." *See* 18 U.S.C. § 1512(b)(3). The indictment alleges that the criminal conduct spanned from on or about December 15, 2014 to on or about May 21, 2015, so it presumably encompasses all of the incidents summarized above, and further alleges that the possible "federal offense" at issue is a civil rights related hate crime under 18 U.S.C. § 249, *i.e.,* the Feinberg-Bichri incident.

**THE DISCOVERY MOTIONS**

The defendant's discovery motions principally revolve around section 1512(b)(3)'s requirement that the information at issue relate "to the commission or possible commission of a Federal offense." The defendant contends, in essence, that there was never a "federal offense" to be tampered with, and thus no violation of section 1512(b)(3). The defendant contends that, although the government has invoked the Feinberg-Bichri incident as the basis for the possible federal offense, it was in fact never interested in investigating or prosecuting that matter and has only used it as a pretext to target the defendant and bring his conduct within the purview of the witness tampering statute. This matters, the defendant argues, because the Supreme Court held in *Fowler v. United States*, 131 S.Ct. 2045 (2011) that the government must show a reasonable likelihood that, but for the tampering, the relevant communication would have been conveyed to a federal official. The defendant argues that if it could be shown that there was in fact no federal civil rights investigation, the government would necessarily be unable to satisfy this element, and the indictment would be subject to dismissal. The defendant does acknowledge the government's representations that it received information regarding both a civil rights and witness tampering case as early as December 23, 2014, and that it officially opened a federal investigation on December 24, 2014, but contends that these assertions are not credible.

Against this backdrop, the defendant seeks discovery in two areas. First, he seeks so called "Fowler" material from several entities, including the U.S. Attorney's Office, the FBI, the Massachusetts State Police, the Middlesex District Attorney's Office, and the Cambridge and Malden police departments, in order to explore whether and when a federal civil rights investigation of Feinberg ever existed. Among other requests, the defendant seeks discovery tending to show that the government used the Feinberg-Bichri incident as a pretext to bring federal

charges against the defendant, information regarding the existence (or not) of a civil rights investigation of Feinberg, data regarding the number of federal hate crimes the U.S. Attorney's Office actually investigated from 2012-2015, data regarding the number of state prosecutions during that time period that involved hate crime allegations but were not prosecuted federally, data regarding the number and fate of any hate crime matters the Civil Rights Division of the U.S. Department of Justice reviewed or investigated during that same time period, and guidelines used by U.S. Department of Justice, the U.S. Attorney's Office or the FBI with respect to the initiation and investigation of hate crimes.  Second, the defendant seeks "Silver Platter" discovery related to an alleged warrantless interception of the defendant's communications, to explore whether there is a basis to file a motion to suppress evidence.

## DISCUSSION

*Fowler Materials*

Section 1512(b)(3) makes it a crime to attempt to corruptly persuade another person with the intent to prevent a communication to a law enforcement officer of information relating to the possible commission of a federal offense.  *See* 18 U.S.C. § 1512(b)(3) ("[w]hoever knowingly…corruptly persuades another person, or attempts to do so,… with intent to…prevent the communication to a law enforcement officer… of information relating to the commission or possible commission of a Federal offense…").  The parties disagree as to what is required or sufficient to show that a particular communication relates to the possible commission of a federal offense, and thus what may be relevant, material or exculpatory for discovery purposes. Underlying that disagreement is the Supreme Court's decision in *Fowler*.

In *Fowler,* Fowler and several other men were in a cemetery preparing to rob a bank.  When a police officer unexpectedly came upon the men, Fowler subsequently shot and killed the officer

before the officer could convey any information about the group to anyone else.  Fowler was subsequently charged and convicted of violating a similar federal witness tampering statute, 18 U.S.C. § 1512(a)(1), which made it a crime to kill another person with the "intent to…prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission or a Federal offense."  Fowler appealed and argued that the evidence was insufficient to show that he killed the police officer to prevent him from communicating with a federal officer.  The Supreme Court vacated Fowler's conviction and held that where a defendant acts with an intent to prevent a communication about a possible commission of a federal offense, but to law enforcement officers in general rather than to some specific law enforcement officer, the government must for purposes of the intent element show a "reasonable likelihood" that that the communication would have been made to a federal law enforcement officer had it in fact been made.  This means that the likelihood of communication to a federal officer must be more than remote, outlandish, or simply hypothetical.  *Fowler,* 131 S.Ct. at 2048-2052.

      The defendant argues that after *Fowler,* it is clear that the government must prove in the context of this case that there was a real civil rights investigation rather than a hypothetical one, that is, that there was a reasonable likelihood that Bichri would have provided information to federal officials regarding the Feinberg-Bichri civil rights incident.  The government by contrast argues that *Fowler* does not apply to this case because the *Fowler* Court was addressing the wholly separate issue of how to prove a defendant had an intent to prevent a communication to a federal officer where the defendant did not think specifically about any particular communication or its recipient, and the communication was never made.  *See id.* at 2050.  The government argues that because Bichri was already speaking with a federal law enforcement officer at the time the

defendant paid him money to agree not to cooperate, *Fowler* is not applicable (and the discovery the defendant seeks is thus not warranted).

In the Court's view, *Fowler* most likely does not control the present issue, because the indictment alleges that the present defendant here, unlike the defendant in *Fowler*, acted with an intent to prevent a witness from conveying information about the Bichri-Feinberg incident to law enforcement officials. As such, this is not the sort of situation presented in *Fowler* where it was necessary to speculate as to whether and to whom a communication might be made. But, even assuming *Fowler* does apply, the indictment coupled with the government's representations, including those made through the *Declaration of Assistant U.S. Attorney Fred M. Wyshak, Jr.,* alleges that the government had commenced a federal civil rights investigation regarding the Feinberg-Bichri incident as of December 24, 2014. At a minimum then, the defendant's alleged conduct from December 24, 2014 onward would arguably still come within the scope of section 1512(b)(3) because the government would have a good faith basis to assert that there was a reasonable likelihood that Bichri's communications would be conveyed to someone who turned out to be a federal law enforcement officer.

To be sure, the defendant devotes considerable time and space to arguing that the notion of a true, active federal civil rights investigation was a pretext and that, indeed, the discovery he seeks is in part to prove that thesis. The response to this is twofold. First, the Court credits the defendant's good faith in advancing this argument but is not inclined at this juncture to question the veracity of the government's affidavit as well as its stated acknowledgement of its ongoing *Brady* obligations in order to justify what appears to be a burdensome request. *See United States v. Roberts*, No. 01 CR 410 RWS, 2001 WL 1602123, at *16 (S.D.N.Y. Dec. 14, 2001) ("… a defendant may be denied a request for a pre-trial discovery order made pursuant to *Brady* where

6

the [g]overnment has made a good-faith representation to the court and defense counsel that it recognizes and has complied with its disclosure obligations under *Brady*."); *United States v. Jacobs*, 650 F. Supp. 2d 160, 166-167 (D. Conn. 2009) (where the government represented to the court that it had fully and completely complied with its obligations under *Brady*, the court held that "[p]lacing reliance upon that representation, I see no reason to order the government to produce broad, speculative categories of information which may not exist, or which the government may have withheld upon a determination that such information is not 'material' to the fairness of the trial").  Second, the defendant has indicated elsewhere that he intends possibly to assert this issue in the context of a Rule 12(b) motion.  In the Court's view, that is the better vehicle in which to raise and explore this issue.  Accordingly, to the extent the defendant seeks discovery beyond that which the government represents in its opposition it has already produced, this portion of the defendant's motion is denied.

   *Silver Platter Doctrine*

The defendant seeks discovery related to an alleged warrantless interception of the defendant's communications, as well as information relating to the Massachusetts State Police's application for a *Blood* warrant pursuant to *Commonwealth v. Blood*, 507 N.E. 2d 1029 (Mass. 1987), or a warrant pursuant to M.G.L. c. 272, § 99, authorizing the interception of communications between the defendant and Bichri.  The government has responded that it is not aware of any *Blood* warrant being obtained and the Court accepts this representation.  With respect to the defendant's remaining requests for policies relating to the interception of oral or wire communications of defense attorneys, these guidelines would not on their own create any enforceable rights and thus are not discoverable as *Brady* or material information.  *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990).  This portion of the motion is accordingly denied.

7

**ORDER**

For the foregoing reasons, the defendant's initial and supplemental motions for an order requiring the government to produce DOJ and USAO records demonstrating the unlikelihood of a federal prosecution or investigation are DENIED. (Dkt. No. 17 and 28).  Further, the government's motion to strike is DENIED as it is now moot.  (Dkt. No. 19).

**SO ORDERED.**

/s/ Donald L. Cabell
DONALD L. CABELL
United States Magistrate Judge

DATED:  November 11, 2015