UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIM. NO. 15-10127-MLW |
| TIMOTHY R. FLAHERTY, | ) ) ) | |
| Defendant. | ) | |

## **GOVERNMENT'S RESPONSE TO THE DEFENDANT'S APPEAL FROM THE MAGISTRATE JUDGE'S ORDER ON DISCOVERY**

The defendant has filed yet another motion, based on his interpretation of *Fowler v. United States*, 131 S. Ct. 2045 (2011), seeking broad categories of discovery that, as he defines it, "concerns the question of whether a federal civil rights criminal investigation and/or prosecution was reasonably likely on December 23-24, 2014 and, separately, on May 6 and May 21, 2015 as opposed to 'remote, outlandish, [and] simply hypothetical.'" (Dkt. #28 at 7). The defendant's original discovery request focused on an attempt to demonstrate that "there was in fact no initiation of any federal interest (and no reasonable likelihood of any foreseeable federal involvement in the state civil rights case until weeks after the December 23-24, 2014 conversations and meeting involving Flaherty that are discussed above)." (Dkt. #28 at 13). However, as the government previously stated in its discovery letter dated July 10, 2015 (Dkt. #25 at 1), and in its response to the defendant's supplemental motion for discovery which included a sworn affidavit (Dkt. #32 at 2 and *Declaration of Assistant U.S. Attorney Fred M. Wyshak, Jr.*, attached as Exhibit 1 in Dkt. #32 and attached, again, herein), federal authorities commenced a civil rights investigation on the afternoon of December 23, 2014. Thus, the *Fowler* "reasonably likely" standard is inapplicable to

the facts of this case and, therefore, the magistrate judge's order should not be disturbed.

Nevertheless, the defendant now claims that if indeed there was a federal civil rights investigation that was initiated on December 23, 2014, that investigation was pretextual and only existed for the sole purpose of ensnaring the defendant Flaherty in a federal crime. The defendant bases his claims, in part, on some of the very statistics and materials that he now demands be produced in discovery by the government. (Dkt. #47 at 10-13). Furthermore, the defendant requests, without citing any authority in support of his proposition, that the court hold "an evidentiary hearing to test the government's assertions regarding the genesis" of the civil rights investigation. (Dkt. #47 at 1). The government asserts, as did the magistrate judge, that a motion for discovery is not the proper vehicle for the defendant to be raising these issues. (Dkt. #44 at 7). For the reasons previously stated in the government's original motion in opposition, adopted by the magistrate judge (Dkt. #44), and repeated herein, the defendant's assumptions are baseless. Therefore, there is no basis to set aside any part of the magistrate judge's order or find that it is clearly erroneous.

## **INTRODUCTION AND BACKGROUND**

On the afternoon of December 23, 2014, the United States Attorney's Office for the District of Massachusetts ("USAO") was contacted by Sgt. Paul Bulman of the Massachusetts State Police ("State Police") and notified of a civil rights case that was pending in Middlesex County, *Commonwealth v. Ralph Feinberg*. Sgt. Bulman notified the USAO that the defendant in the state case, Ralph Feinberg ("Feinberg"), was being represented by Attorney Timothy Flaherty ("Flaherty") and that Flaherty had contacted the civil rights victim in the Feinberg case and offered the victim money to drop the civil rights case. Sgt. Bulman informed the USAO that Flaherty was particularly eager to meet the victim and give him cash in exchange for dropping the civil rights

case against his client Feinberg. The USAO informed Sgt. Bulman that they were interested in investigating the civil rights case and the potential witness tampering case. The USAO instructed Sgt. Bulman to immediately forward the Feinberg case file via email to the USAO for review and the USAO also verbally authorized Sgt. Bulman, and the State Police, to record the victim meeting with Flaherty that was scheduled to occur on December 24, 2014. The USAO received the Feinberg case file on the afternoon of December 23, 2014, and reviewed the reports of the incident and Feinberg's three-page Massachusetts Board of Probation criminal record ("BOP") contained therein. The USAO made particular note of the fact that Feinberg, at least according to his BOP, had a history of disturbing criminal behavior that closely mirrored the recent state civil rights allegations. For instance, Feinberg had previously been convicted of a Violation of Constitutional Rights (1999-Brookline District Court) and a Violation of Civil Rights (2000-Boston Municipal Court). Furthermore, the USAO immediately noticed that, in June of 2009, according to the BOP received from the State Police on the afternoon of December 23, 2014, Feinberg was convicted in United States District Court for the District of Massachusetts for Interfering with a Flight Crew and received 3 years of probation and, in October of 2010, he was sentenced to 3 months imprisonment and 27 months of supervised release based on a violation of his probationary term. Interestingly, the federal conviction was recorded as being an "open" case according to this copy of the BOP (printed on December 16, 2014) and the USAO took immediate action to determine whether Feinberg was, in fact, still on federal supervised release in Massachusetts.

The USAO contacted the United States Probation Office ("USPO") in Boston and inquired whether Feinberg's federal supervised release was still active. The USPO informed the USAO that Feinberg had originally been convicted in the District of Arizona and his probation was then transferred to the District of Massachusetts. The USPO further stated that Feinberg's probation

3

was revoked by Judge Young and Feinberg was sentenced to imprisonment and his supervised release was extended for 27 months. The USPO stated that Feinberg's supervised release had terminated sometime in 2013 and his BOP should no longer reflect the federal case as remaining open. The USAO requested a copy of Feinberg's presentence report from the USPO but they declined to provide it. The USAO then ascertained the identity of the federal prosecutor that handled the Feinberg probation revocation and attempted to locate a copy of Feinberg's federal PSR. The prosecutor who handled the Feinberg matter was contacted but was not able to produce the PSR until December 29, 2014. The USAO also received the Feinberg PSR from the District of Arizona on December 29, 2014. The USAO, after reviewing the Feinberg materials from the State Police and speaking with Sgt. Bulman regarding the potential of witness tampering involving Flaherty, opened up a civil rights and witness tampering investigation on December 23, 2014. Furthermore, the USAO forwarded this case opening information, and the Feinberg case file to the FBI on the evening of December 23, 2014.

     The USAO closely monitored, through contact with Sgt. Bulman, the developments that occurred on December 24, 2014, between the civil rights victim and Flaherty and was eager to meet with the victim but the victim was traveling out of the country for approximately one month. The USAO met with the FBI, the State Police, and the Middlesex District Attorney's Office on January 7, 2015, regarding the civil rights and the witness tampering investigations. Due to intervening holidays and scheduling conflicts, January 7, 2015, was the earliest date for which a meeting with all relevant parties could be scheduled. On February 5, 2015, the FBI conducted an interview of a potential witness to the Feinberg investigation. On February 23, 2015, the USAO and the State Police met with the civil rights victim and spoke with him regarding the Feinberg investigation.

The FBI internally documented the initiation of the federal criminal civil rights investigation by memorandum dated January 20, 2015.   Based on the memorandum, a civil rights investigation was also opened in the Criminal Section, Civil Rights Division ("CRT") of the Department of Justice.   In the ensuing months the USAO and CRT attorneys consulted on the investigation.

## ARGUMENT

The defendant's purported legal justification for the myriad of categories of data on the Department of Justice's investigations and prosecutions of federal hate crimes, as well as discovery of various work product and internal communications, rests on a misapplication of *Fowler v. United States*, 131 S. Ct. 2045 (2011) to the facts and circumstances of this case.[1]   In *Fowler*, several bank robbers were plotting the robbery when a local police officer came upon them suddenly and Fowler killed him.   Fowler was indicted and convicted under 18 U.S.C. § 1512(a)(1)(C) for killing the victim to prevent him from communicating with a federal officer, as required by the statute. The conviction was upheld by the Eleventh Circuit holding that a showing of a "*possible* or *potential* communication to federal authorities" was sufficient.   131 S. Ct. at 2048 (emphasis in original).   In reviewing the conviction, the Supreme Court framed the question before it as follows:

---

[1] In passing, the defendant also claims that "[i]n a prosecution under 18 U.S.C. § 1512(b)(3), the government must prove a federal nexus between the 'persuasion' act in paragraph (b) and the object of the interference in the subsequent subsections," citing *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707 (2005). (Dkt. #28 at 16 and Dkt. #47 at 13-14). However, *Arthur Andersen* concerned the nexus requirement in § 1512(b)(2), which focuses on obstruction or witness tampering in relation to an official proceeding, and the Supreme Court in *Fowler* makes no reference to *Arthur Andersen*. The inapplicability of *Arthur Andersen* to § 1512(b)(3) was also noted by the First Circuit in *United States v. Byrne*, 435 F.3d 16, 25 (1st Cir. 2006)("expressing doubts" that *Arthur Andersen* requires a heightened showing of a nexus in a § 1512(b)(3) prosecution between the intent to hinder communication and a particular law enforcement agency").

> We focus on instances where a defendant killed a person with an intent to prevent that person from communicating with law enforcement officers in general but where the defendant did not have federal law enforcement officers *(or any specific individuals)* particularly in mind. The question before us concerns what, if anything, the Government must show beyond this broad indefinite intent in order to show that the defendant more particularly intended to prevent communication with federal officers as well. We hold that, *in such circumstances*, the Government must show that there was a reasonable likelihood that a relevant communication would have been made to a federal officer.

*Id*. at 2048 (emphasis added).   The Court was trying to synthesize the language of the statute that a defendant intends to prevent communication "to a law enforcement officer of the United States" with a related subsection that states:

> no state of mind need be proved with respect to the circumstance ... that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government....   § 1512(g)(2).

*Id*. at 2049.

The Court explicitly excluded from its holding applications to non-hypothetical circumstances.   The *Fowler* Court began its analysis by explaining situations under which the statute was clear, and in no need of further interpretation. "If a defendant kills a victim with the intent of preventing the victim from communicating with a particular individual, say John Smith, who the defendant knows is a federal law enforcement officer, the statute fits like a glove." *Id*. [2]

"If a defendant kills a victim with the intent of preventing the victim from communicating with Sam Smith, who is in fact (but who the defendant does not know is) a federal law enforcement officer, the statute still fits, for it specifically says that 'no state of mind need be proved' with

---

[2] This scenario, of course, was reflected in the May 16 and 21, 2015 calls when Flaherty, confronted with the information that federal authorities wanted to speak with the victim, told the victim not to speak to the U.S. Attorney's Office and the FBI, respectively.

respect to this last-mentioned circumstance." *Id.* [3] In other words, the "reasonably likely" nexus discussed in *Fowler* simply does apply to this case where federal participation in the investigation of the underlying hate crime had begun prior to the time Flaherty paid the victim the money and continued while Flaherty's attempted obstructive conduct further ensued.

*Fowler* was concerned with tampering that prevents hypothetical communications with federal law enforcement, not actual communications. *Id*. at 2050 ("And we must consequently decide what, if anything, the Government must show about the likelihood of a hypothetical communication with a federal law enforcement officer in circumstances where the defendant did not think specifically about any particular communication or its recipient."); *see also United States v. Jinian*, 725 F.3d 954, 967 (9th Cir. 2013) ( "The *Fowler* Court adopted a foreseeability standard because the witness tampering statute addresses hypothetical communications."). Where the witness has already spoken to a federal law enforcement officer (or, as in this case, Sgt. Bulman effectively authorized to work on behalf of the federal government),[4] the requirement of a "reasonable likely showing" does not apply, nor does it make any sense. *See Cross v. Wilson*, No. 2:11CV332, 2011 WL 9156863, at *3 (E.D. Va. July 1, 2011) aff'd, 454 F. App'x 229 (4th Cir.

---

[3] This scenario also applies to the present case because, unknown to Flaherty, the victim was already cooperating with, what was then, a federal investigation by December 24, 2014, when Flaherty paid him the bribe to not show up in court and to avoid law enforcement.

[4] § 1515(a), which defines the terms used in § 1512, provides, in pertinent part: "the term 'law enforcement officer' means an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant ... authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense." 18 U.S.C. § 1515(a)(4)(A). Similarly, 18 U.S.C. § 1512(g)(2) states that "not state of mind need be proved with respect to the circumstance . . . that the law enforcement officer is . . . a person authorized to act for or on behalf of the federal government." *See United States v. Baldyga*, 233 F.3d 674, 680 (1st Cir. 2000)(" Because the local police officers monitoring the transaction between Chenevert and Baldyga were acting with the DEA as part of a joint investigation, they may be considered federal officials for the purposes of § 1512(b)(3)").

7

2011) (denying § 2255 relief based on a post-*Fowler* claim that the law had changed; "In the instant action, the victim had already spoken to a federal law enforcement officer. Therefore, there is no need to determine whether there is a reasonable likelihood of the witness speaking with a federal law enforcement officer under either 18 U.S.C. § 1512 or § 1513.").

Essentially, *Fowler* has not changed the law "that the statute explicitly disclaims any requirement that the defendant knew that the "communication ... of information relating to the commission or possible commission of a Federal offense" would be made to a federal official. 18 U.S.C. § 1512(g)(2). *Fowler,* 131 S.Ct. at 2050 ("And we cannot insist that the defendant have had some general thought about federal officers in mind because the statute says that 'no state of mind need be proved' in respect to the federal nature of the communication's recipient."); *see also United States v. Baldyga*, 233 F.3d 674, 680 (1st Cir. 2000) ("We also want to dispel any notion that the defendant's intent ... must include an awareness of the possible involvement of federal officials."). That Flaherty attempted to corruptly persuade the victim on December 24, 2014, from communicating further with state investigators and ADAs when, in fact, there was already a federal investigation and the victim was already communicating with those who would investigate his client's conduct as a federal crime is of no consequence. *Byrne*, 435 F. 3d at 25 ("we doubt that a defendant is beyond the purview of subsection (b)(3) merely because he expected the witness he tampered with to be interviewed by State Officer X in particular, but the witness actually was contacted by Federal Agent Y"); *see also United States v. Applewhaite*, 195 F.3d 679, 687 (3d Cir.1999) ("One who attempts to corruptly influence an investigation takes his or her witnesses and investigation as he or she finds them.").

While the law is clear under § 1512 that a federal investigation need not be ongoing at the time of a defendant's witness tampering, it is equally established that proof that a federal

investigation had begun at the time of the tampering satisfies whatever requisite federal nexus is required, given that, under § 1512(g), a defendant need not suspect that the witness would communicate to federal, as opposed to state, officials. In *United States v. Rodriguez–Marrero*, 390 F.3d 1, 13 (1st Cir. 2004), the court, analyzing a parallel provision for witness tampering by murder[5], held that the federal nexus can be satisfied "among other ways, by demonstrating that the underlying offense was a federal offense and that the federal authorities had begun an investigation prior to the informant's murder or attempted murder." *Id.* (citing *United States v. Bell*, 113 F.3d 1345, 1349–50 (3d Cir.1997)). The *Rodriguez-Marrero* court went on to reject the defendant's argument that he had believed his crime to be of a non-federal nature, stating "[defendant]'s claim that he did not realize that he was helping to conceal a federal crime by murdering [the victim] is irrelevant." *Id.* (citing *Applewhaite,* 195 F.3d at 687 ("All that [a parallel provision in the Witness Protection Act][6] requires is that the government establish that the defendants had the intent to influence an investigation that happened to be federal.").[7]

Thus, Flaherty's argument that he did not believe that the underlying civil rights crime would be of investigative interest to the federal authorities is not only legally irrelevant, but fails to

---

[5] 18 U.S.C. § 1512(a)(1)(C); the two provisions are part of the group of provisions related to "law enforcement" or "investigation," and are frequently subject to similar analysis. *See, e.g., United States v. Tyler*, 732 F.3d 241, 248 (3d Cir. 2013) (distinguishing 1512(a)(1)(C) and (b)(3) from the "official proceedings" group of provisions in 1512(b)(1-2), etc.)

[6] 18 U.S.C. § 1512(b)(3).

[7] *Rodriguez-Marrero* preceded *Fowler*, but the standard has not changed; post-*Fowler* courts have recognized the sufficiency of such evidence in establishing the federal nexus. *See, e.g., United States v. Ramos-Cruz*, 667 F.3d 487, 499 (4th Cir. 2012) (explicitly recognizing the holding in *Rodriguez-Marrero* in deeming sufficient evidence of an ongoing federal investigation); *see also, Cross v. Wilson*, No. 2:11CV332, 2011 WL 9156863, at *3 (E.D. Va. July 1, 2011) *aff'd,* 454 F. App'x 229 (4th Cir. 2011) (explicitly rejecting the notion that *Fowler* applied to inquiry into federal nexus for witness tampering where the victim had already talked to federal law enforcement officer.)

establish why the data he seeks on federal hate crime investigations and prosecutions is favorable, much less material, to his defense to the charges.

Flaherty also makes the unfounded argument that the federal civil rights investigation was some kind of subterfuge to support a federal nexus for the witness tampering charge. But this baseless allegation, too, does not justify the kind of wholesale and intrusive discovery he seeks. First, § 1512(b)(3) requires only that the communications sought to be prevented relate to the "possible" commission of a federal offense, and the statute sets no threshold for the severity of the conduct or level of proof to warrant an investigation. Second, Flaherty's citation to cases involving "manufactured" federal jurisdiction offers no support.[8] As the First Circuit has recognized, the reach of the defense of "manufactured jurisdiction is limited by focusing on the objective conduct of the defendant, rather than the government, in determining whether the element was truly furnished solely by the government. *United States v. Djokich*, 693 F.3d 37, 45 (1st Cir. 2012) (recognizing that manufactured jurisdiction is not present "when there is any link between the federal element and a voluntary, affirmative act of the defendant.") (citing *United States v. Wallace*, 85 F.3d 1063, 1066 (2d Cir.1996)). Here, as in *Wallace*, the "link between the federal element" — a federal investigation into a possible federal civil rights crime — "and the voluntary, affirmative act" — defendant's attempt to bribe a witness to that crime — clearly exists in part because of the defendant's acts. *Id*. No federal element was "furnished solely" by the government. *See Archer*, 486 F.2d at 685-86. The underlying potential commission of a federal offense was caused by Feinberg's conduct, the investigation into that offense was the appropriate response within the purview of the federal authorities, and Flaherty's voluntary witness-tampering

---

[8] The so-called "manufactured jurisdiction" defense may apply when the government alone, rather than the defendant, furnished the federal element necessary for jurisdiction. *See United States v. Archer*, 486 F.2d 670, 686 (2d Cir. 1973).

both on December 24, 2014 and subsequently in May of 2015 was certainly his own responsibility.[9]

In any event, for purposes of Flaherty's discovery motion, this Court need not address the deficiencies of his claim of "manufactured jurisdiction." As the First Circuit has noted, "the concept of manufactured jurisdiction [is] a subset of the outrageous [government] misconduct doctrine." *Djokich*, 693 F.3d 37 at. 45 (1st Cir. 2012)(citation omitted). Such a claim, if raised, is a legal one for the Court to decide. The Supreme Court has explained that the phrase "material to the preparation of the defendant's defense" in Fed. R. Cr. P. 16(a)(1)(E)(I) 16 "means the defendant's response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). Thus, the Court held that the Rule "authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." *Id*. at 463. Here, Flaherty's unsupported claim of some kind of "manufactured jurisdiction" is akin to the claims in *Armstrong*, which supports the denial of his broad discovery requests.

Finally, the defendant repeats his claim that he is entitled to discovery that is material to his assertion that there was an alleged warrantless interception of the defendant's communications

---

[9] Even if the government had instigated the witness tampering investigation for the sole purpose of catching the defendant in a sting, the defendant's later attempts to get the victim to ignore what he came to know were federal authorities would defeat the manufactured jurisdiction defense. *See Wallace*, 85 F.3d at 1066 ("when confronted with situations in which (i) the [government] introduces a federal element into a non-federal crime and (ii) the defendant then takes voluntary actions that implicate the federal element, . . . federal jurisdiction has not been improperly 'manufactured' and that the statutory elements have been met"); *see United States v. Al Kassar*, 660 F.3d 108, 120 (2d Cir. 2011) ("Creating an opportunity for a defendant to engage in criminal conduct does not violate the Constitution and does not constitute a 'manufacture' of jurisdiction—or of any of the elements required to obtain a conviction for that criminal conduct.").

that occurred on December 24, 2014. The defendant predicts that he will file a motion to suppress the recording because it was obtained in violation of the so-called "silver platter" doctrine. However, as explained in *United States v. Sutherland*, 929 F.2d 765, 769 (1st Cir. 1991), this doctrine prevents federal authorities from utilizing evidence that was obtained by state law enforcement officers who were not acting with federal involvement at the time they seized evidence in violation of state law. Notably, the "silver platter" doctrine does not apply because, in the matter at hand, the state law enforcement officers were, in fact, working with federal involvement as of the evening of December 23, 2014, and they had the express authority to record the meeting that occurred on December 24, 2014.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests the Court affirm the magistrate judge's order and deny the defendant's appeal for additional discovery.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:   *S. Theodore Merritt*
S. THEODORE MERRITT
Assistant U.S. Attorney

By:   *Robert A. Fisher*
Robert A. Fisher
Assistant U.S. Attorney

Date: December 9, 2015

## Certificate of Service

I hereby certify that, on the above date, this document was filed through the ECF system which sends copies electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Robert A. Fisher
Robert A. Fisher
Assistant U.S. Attorney